ORIGINAL

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MESA GRANDE BAND OF MISSION INDIANS

v.

THE UNITED STATES

No. 14-1051L

FILED

OCT 28 2014

U.S. COURT OF
FEDERAL CLAIMS

## COMPLAINT

### INTRODUCTION

1. This is an action seeking just compensation as required by the Fifth Amendment to the Constitution of the United States for the taking of compensable property and property rights. Specifically, Plaintiff Mesa Grande Band of Mission Indians (sometimes referred to hereafter as "Mesa Grande" or the "Band") seeks just compensation for approximately 80 acres permanently reserved by Congress "for the occupancy and use of the Indians of the Mesa Grande Reservation" (sometimes referred to hereafter as "the subject land") which the Department of the Interior (sometimes referred to hereafter as "Interior") wrongfully conveyed by patent to the Santa Ysabel Band of Mission Indians (sometimes referred to hereafter as "Santa Ysabel"). In the alternative, Plaintiff seeks damages for breach of the Defendant's fiduciary duty to hold the subject land in trust for Plaintiff's exclusive use and possession.

### JURISDICTION

2. This Court has jurisdiction under 28 U.S.C. §§ 1491 (the Tucker Act) and 1505 (the Indian Tucker Act) because this action presents a "claim against the United States . . . arising under the Constitution, laws or treaties of the United States, or Executive orders of the President."

## PARTIES

3. Plaintiff Mesa Grande Band of Mission Indians is a federally recognized tribe whose reservation lands are located within San Diego County, California. Beneficial ownership of a portion of those lands ("Tract 1" and "Tract 2") has been in dispute since the 1960s and is the subject of a Mesa Grande request currently pending before the Bureau of Indian Affairs ("BIA").

4. Defendant United States of America is a republic formed under the United States Constitution and exercising the powers described therein subject to certain limitations, including the Fifth Amendment to the Constitution.

## FACTUAL AND LEGAL BACKGROUND

5. On December 27, 1875, President Ulysses S. Grant issued an executive order to set aside, *inter alia*, three tracts of land consisting of approximately 15,000 acres, which tracts have come to be referred to as Tract 1, Tract 2 and Tract 3, for the Mission Indians known as "Santa Ysabel—including Mesa Grande." This was followed by another executive order in 1883, which set aside a 120-acre tract for a Mesa Grande Band family consisting of three people.

6. In 1891, Congress enacted the Mission Indian Relief Act, establishing a three-person commission to select "a reservation for each band or village of the Mission Indians residing within said State, which reservation shall include, as far as practicable, the lands and villages which have been in the actual occupation and possession of said Indians." The selection of each reservation was to become valid when approved by the Secretary of the Interior and the President, per the Act of January 12, 1891, 26 Stat. 712, § 2.

7. As required by the Mission Indian Relief Act, the commission (known as the Smiley Commission) conducted its investigation to determine where each Mission Indian Band

2

was living and prepared a report to the Secretary of the Interior recommending which lands should be set aside for each Mission Band.

8. The report, which was approved by President Benjamin Harrison by executive order dated December 29, 1891, recommended that all three tracts that had been set aside for "Santa Ysabel—including Mesa Grande" by the Executive Order of 1875 be set aside for the Santa Ysabel Band and recommended that only the 120 acres set aside by Executive Order in 1883 be patented to Mesa Grande alone. Patents conforming to the recommendation were issued on February 10, 1893.

9. The Mesa Grande Band and its members have exclusively occupied and possessed Tracts 1 and 2, as well as the lands surrounding those Tracts, since time immemorial. From at least the Executive Order of 1875 until the late 1960s, the BIA or its predecessor the Office of Indian Affairs have recognized that the Mesa Grande Band of Mission Indians was the band in actual occupation and possession of Tracts 1 and 2 and administered those Tracts for the benefit of and in consultation with the Mesa Grande Band.

10. On June 1, 1925, Charles L. Ellis, Superintendent of the BIA's Mission Agency, requested that the Commissioner of Indian Affairs set aside "for use of the Mesa Grande Indians" an 80-acre parcel adjoining the eastern boundary of Tract 1 consisting of the west half of the Southwest quarter of Section 11, Township 12 South, Range 2 East of the San Bernardino Meridian ("the subject land").

11. Mr. Ellis wrote that the subject land was important because it contained a spring "which furnishes water to stock on the Mesa Grande Indian Reservation," and that "[the Band] have used it for years and consider it as theirs, but there is no record that it has ever been reserved for their use. It has been reported that a white man is threatening to fence it up, and as

the Indians are really entitled to it, it is recommended it be set aside."

12. On August 25, 1925, Secretary of the Interior Hubert Work wrote to President Coolidge requesting that the 80-acre tract be temporarily withdrawn "as an additional reservation for the Mesa Grande Band." The Secretary further stated that a 120-acre tract had already been reserved for the Band and that the 80 acres would have value to the Band.

13. On August 27, 1925, President Coolidge signed Executive Order No. 4297 temporarily reserving the 80 acres "for the use and benefit of the Indians of the Mesa Grande Reservation" until March 5, 1927.

14. By letter dated December 14, 1925, Commissioner of Indian Affairs Charles Burke requested that Superintendent Ellis explain the relationship between the 80 acres, the 120-acre Mesa Grande reservation, and Tract 1.

15. By letter dated December 19, 1925, Superintendent Ellis explained that "[Tract 1] is locally known as the Mesa Grande Reservation, and the Indians shown on the Census as Mesa Grande Indians are, in the main, occupants of this Tract."

16. On January 15, 1926, Secretary Work sent to the chairmen of the House and Senate Committees on Indian Affairs a draft bill providing for the permanent withdrawal of the 80 acres for the use of the "Indians of the Mesa Grande Reservation." The Secretary's letter noted that "[the 80 acres] adjoins land patented in trust in 1893 to that band of Indians . . . ."

17. By the Act of May 10, 1926, Pub. L. No. 69-209, 44 Stat. 496, ch. 280 ("the 1926 Act"), Congress permanently reserved the 80-acre tract for the Mesa Grande Band:

> That there is hereby withdrawn from settlement, entry or disposition under the laws of the United States and set apart and reserved for the occupancy and use of the Indians of the Mesa Grande Reservation, also known as Santa Ysabel Reservation Numbered 1, a tract of land in the State of California, particularly described as the west half of the southwest quarter of section 11, township 12 south, range 2 east of San Bernardino meridian, containing eighty acres, the same to be added to and become part of said Indian

4

reservation.

18. Upon enactment of the 1926 Act, property rights in the 80-acre tract vested in the Mesa Grand Band.

19. The 1926 Act identified Santa Ysabel Tract 1 as the "Mesa Grande Reservation" and declared that the 80 acres was an addition thereto.

20. As required by the 1926 Act, during the period beginning on the effective date of the 1926 Act and ending on the date of the acts complained of herein, Defendant held title to the subject land in trust for Plaintiff's exclusive benefit.

21. On June 8, 1926, E.B. Meritt, Assistant Commissioner of Indian Affairs, sent copies of the 1926 Act to William Spry, Commissioner of the General Land Office ("GLO") and Superintendent Ellis at the Mission Indian Agency. The Assistant Commissioner requested that both officials make the necessary notations reflecting this law "upon the records of your office."

22. The GLO did not issue a patent for the 80 acres to the Mesa Grande Band in fulfillment of Congress's direction that the land be "set apart and reserved for the occupancy and use of the Indians of the Mesa Grande Reservation."

23. From the 1930s to the 1960s, Interior reported numerous times that the acreage of the Mesa Grande Reservation was 5,963.11 acres, which total included the 80 acres set aside "for the occupancy and use of the Indians of the Mesa Grande Reservation" by the 1926 Act. In several of these reports, Interior explicitly relied upon either Executive Order 4297, or on both the executive order and the 1926 Act, as authority for the inclusion of the 80 acres as part of the Mesa Grande Reservation.

24. In the late 1960s, the Mesa Grande Band's application to the Department of Housing and Urban Development for funds to improve tribal housing on Tracts 1 and 2 was denied because it was determined that Tracts 1 and 2 had been patented to Santa Ysabel. As a

5

result, in the early 1970s, the Mesa Grande Band asked Interior to correct the patents issued to Mesa Grande and Santa Ysabel pursuant to the Mission Indian Relief Act and restore Tracts 1 and 2 to Mesa Grande's beneficial ownership.

25. In arguing that the 1893 patent to Tract 1 should be corrected, the Mesa Grande Band relied on the language of the 1926 Act reserving the land "for the occupancy and use of the Indians of the Mesa Grande Reservation, also known as Santa Ysabel Reservation Numbered 1" as proof that it, not Santa Ysabel, had historically occupied Tract 1.

26. In 1978, the Assistant Secretary for Indian Affairs denied Mesa Grande's request on the grounds that the Department did not have jurisdiction to correct the patents and that the land had been patented to Santa Ysabel because the Smiley Commission had probably concluded that the "historical separation of the two bands . . . may have been lost through intermixture of the members of the two groups."

27. The Assistant Secretary also recommended that the BIA work towards "the establishment of a new tribal governing structure encompassing the individuals living on all three tracts," which would "reflect the ownership rights of Santa Ysabel and the occupation of the tracts by those of Mesa Grande."

28. In spite of the 1978 determination that Mesa Grande had merged with Santa Ysabel and ceased to be a separate and distinct band, the United States has continued to recognize and deal with the Mesa Grande Band as a separate and distinct tribal government.

29. The BIA has never attempted to implement the 1978 recommendation that it organize a tribal government that encompasses the people of all three tracts and recognizes the occupancy of Tracts 1 and 2 "by those of Mesa Grande."

30. On February 26, 1980, BIA Southern California Agency Acting Superintendent

Frank Haggerty, Jr. requested the BIA Sacramento Area Director to issue a trust patent to the Santa Ysabel Band for the 80 acres adjoining Tract 1. The Acting Superintendent stated that "[a]lthough the [1925] Executive Order cites the land for the use and benefit of the Indians of the Mesa Grande Reservation," the 80 acres should be patented to Santa Ysabel because Tract 1 was patented to Santa Ysabel. This request did not reference the 1926 Act.

31. Notwithstanding the provisions of the 1926 Act and Executive Order 4297, Defendant issued Trust Patent No. 04-80-0023 (July 13, 1980), which conveyed the 80-acre tract to the Santa Ysabel Band.

32. A letter dated August 22, 1980 from the BIA Southern California Agency Superintendent notified the Santa Ysabel Band that the patent had been issued and stated "[p]lease understand that this is not additional land for the Santa Ysabel Band, it is land already held by the Band but was not covered by a trust patent before now."

33. Notwithstanding its knowledge that the Mesa Grande Band claimed beneficial title under the 1925 Executive Order and the 1926 Act of Congress, for more than three decades the BIA did not notify Mesa Grande by letter or otherwise act to put Mesa Grande on notice that it had issued a patent for the 80-acre tract to the Santa Ysabel Band.

34. The Mesa Grande Band did not discover that the BIA had patented the 80-acre tract to the Santa Ysabel Band until November 12, 2010 when, in response to Mesa Grande's Freedom of Information Act ("FOIA") request regarding its claim to Tracts 1 and 2, the BIA provided to the Band certain documents, including a copy of the patent, showing that in 1980 it had conveyed beneficial title to the 80 acres to the Santa Ysabel Band.

35. The November 12, 2010 FOIA response was the first time that the Band was made aware that the 80 acres had been patented to Santa Ysabel in 1980. Before November 12,

2010, there was nothing to alert the Mesa Grande Band of the 1980 patent—it received no notice or correspondence suggesting that the patent had issued or that the subject land's status had changed in any way nor did it otherwise possess any knowledge thereof.

36. On information and belief, at no time following the issuance of the 1980 patent did the BIA or the Santa Ysabel Band post a notice on the subject land that it had been conveyed to Santa Ysabel.

37. On information and belief, at no time following the issuance of the 1980 patent did the BIA or the Santa Ysabel Band attempt to exclude the Mesa Grande Band or its members from the 80-acre tract.

38. In 1925-26, the subject land was described as being "rough, rocky, and in a canyon,"

39. Although the 80-acre tract had been withdrawn and statutorily reserved for Mesa Grande in 1926 because it contained a spring "which furnishes water to stock on the Mesa Grande Indian reservation," upon information and belief, by 1980, Mesa Grande and its members had not raised livestock for several decades and had no practical need to use the tract.

40. Upon information and belief, the 80-acre tract is remotely located, isolated, not accessible by any roadway, and may be accessed from Tract 1 only by foot over extremely rough terrain.

41. Upon information and belief, no one has ever lived on the 80-acre tract, it has never been developed or improved, and no visible or discernable changes in land use have occurred since 1980.

42. By issuing a patent conveying beneficial title, i.e., exclusive use and occupancy rights, to Santa Ysabel and writing a letter to Santa Ysabel, Defendant deprived Mesa Grande of

possession, use and enjoyment of its property.

43. Defendant's agents acted within the general scope of their duties when they wrongfully issued Trust Patent No. 04-80-0023 (July 13, 1980) and conveyed the 80-acre tract to the Santa Ysabel Band.

## FIRST CLAIM FOR RELIEF
### Taking of Property Without Just Compensation

44. The allegations contained in paragraphs 1 through 43 are incorporated herein by reference.

45. The subject land is recognized as property and, as such, may not be taken for public use without payment of just compensation.

46. By reason of Defendant's acts as herein alleged, Plaintiff's property—the 80 acres adjacent to Tract 1—has been taken for public use within the meaning of the Fifth Amendment to the United States Constitution.

47. Defendant has failed to pay just compensation for taking the 80 acres in violation of the Fifth Amendment to the United States Constitution which provides, in part, "[n]or shall private property be taken for public use, without just compensation."

48. Plaintiff is entitled to the full fair-market value of the subject land on the date it was taken by the United States, together with pre-judgment interest.

## SECOND CLAIM FOR RELIEF
### Breach of Trust

49. The allegations contained in paragraphs 1 through 48 above are incorporated herein by reference.

50. By reason of Defendant's acts as herein alleged, the subject land was conveyed to the Santa Ysabel Band in violation of Defendant's duty as Plaintiff's trustee to hold and protect

the subject land for Plaintiff's exclusive use and benefit.

51. Defendant's breach of trust has damaged Plaintiff in an amount equal to the full fair-market value of the subject land at the time it was conveyed by Defendant to the Santa Ysabel Band, together with pre-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, the Mesa Grande Band of Mission Indians respectfully requests a money judgment in its favor awarding:

1. The full fair-market value of the subject land, in an amount to be determined, on the date it was taken by Defendant, together with pre-judgment interest;

2. In the alternative, damages for Defendant's breach of its duties as Plaintiff's trustee to hold and protect the subject land for Plaintiff's exclusive use and benefit in an amount to be determined and equal to the full fair-market value of the subject land on the date it was taken by Defendant together with pre-judgment interest;

3. Attorneys' fees, expert-witness fees, and other costs incurred herein; and,

4. Such other and further relief as this Court may deem just and proper.

Dated: October 27, 2014

Respectfully submitted.

Derril B. Jordan

Jordan Law Offices, PLLC
1730 Rhode Island Avenue, NW
Washington, D.C. 20036
Telephone: (202) 223-0893
Facsimile: (202) 223-0894
djordan@dbjordanlaw.com