# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |
|---|---|
| **Mesa Grande Band of Mission Indians**, <br><br>         Plaintiff; <br><br>    v. <br><br> **United States**, <br><br>         Defendant. | Case No. 14-1051 L <br><br> Judge Charles F. Lettow |

## UNITED STATES' MOTION TO DISMISS FOR LACK OF JURISDICTION AND MEMORANDUM IN SUPPORT THEREOF

JOHN C. CRUDEN
Assistant Attorney General
KRISTOFOR R. SWANSON
Trial Attorney
Natural Resources Section
Envt. & Natural Resources Div.
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0248
Fax: (202) 305-0506
kristofor.swanson@usdoj.gov

January 20, 2015

# Table of Contents

Introduction ................................................................................................ 1

Factual & Legal Background .......................................................................... 1

Standard of Review....................................................................................... 6

Argument ................................................................................................... 7

I.    The Mesa Grande Band's Claims Accrued No Later Than April 1978 When the Assistant Secretary Issued His Decision Related to the 1893 Parcels ................................................................................................ 8

II.    The Mesa Grand Band Has Never Been the Beneficial Interest Holder for the 1926 Parcel and Issue Preclusion Prevents it from Arguing Otherwise ....................................................................... 12

III.    Santa Ysabel is a Necessary Party That Cannot Be Joined Because of Sovereign Immunity; In Equity and Good Conscience, the Case Should be Dismissed .................................................................... 17

      A.    Santa Ysabel is a Necessary Party That Cannot Be Joined Because of Sovereign Immunity ........................................ 17

      B.    The Case Should Not Proceed Without Santa Ysabel Because Adjudicating the Merits Would Necessarily Require a Judicial Pronouncement on Equitable Ownership of Santa Ysabel Tract One, for which Santa Ysabel is the Beneficiary ........................... 20

Conclusion ................................................................................................ 21

i

# Table of Authorities

**Cases**

*Alaska v. Native Venetie Tribal Gov't,*
522 U.S. 520 (1998) ............................................................... 16

*Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands,*
461 U.S. 273 (1983) ............................................................... 16

*Brown v. United States,*
42 Fed. Cl. 538 (1998) ........................................................... 20

*Catawba Indian Tribe v. United States,*
982 F.2d 1564 (Fed. Cir. 1993) ............................................... 9

*Coastal Petrol. Co. v. United States,*
228 Ct. Cl. 864 (1981) ........................................................... 10

*Copar Pumice Co. v. United States,*
112 Fed. Cl. 515 (2013) ......................................................... 7

*DaimlerChrysler Corp. v. United States,*
442 F.3d 1313 (Fed. Cir. 2006) ............................................... 6

*Fallini v. United States,*
56 F.3d 1378 (Fed. Cir. 1995) ................................................. 9

*Fed. Crop Ins. Corp. v. Merrill,*
332 U.S. 380 (1947) ............................................................... 10

*Ft. Mojave Tribe v. United States,*
210 Ct. Cl. 727 (1976) ........................................................... 9

*Ingrum v. United States,*
560 F.3d 1311 (Fed. Cir. 2009) ............................................... 8

*Innovad, Inc. v. Microsoft Corp.,*
260 F.3d 1326 (Fed. Cir. 2001) ............................................... 14

*Inter Tribal Council v. Babbitt,*
51 F.3d 199 (9th Cir. 1995) .................................................... 13

*Iris Corp. Berhad v. United States,*
82 Fed. Cl. 488 (2008) ........................................................... 7

*Japanese War Notes Claimants Ass'n of Phil. v. United States,*
373 F.2d 356 (Ct. Cl. 1967) ............................................................. 12

*John R. Sand & Gravel Co. v. United States,*
552 U.S. 130 (2008) ................................................................... 8, 9

*Karuk Tribe v. Ammon,*
209 F.3d 1366 (Fed. Cir. 2000) ...................................................... 12

*Klamath Tribe Claims Comm. v. United States,*
106 Fed. Cl. 87 (2012), *aff'd* 541 Fed. App'x 974 (Fed. Cir. 2013) ..................... 21

*L. E. Cooke Corp. v. United States,*
27 Fed. Cl. 753 (1993) ................................................................. 9

*Land v. Dollar,*
330 U.S. 731 (1947) .................................................................... 6

*Lee v. United States,*
22 Cl. Ct. 457 (1991), *aff'd* 954 F.2d 735 (Fed. Cir. 1992) ................................ 16

*Menominee Tribe of Indians v. United States,*
726 F.2d 718 (Fed. Cir. 1984) ......................................................... 9

*Mesa Grande Band of Mission Indians v. Salazar,*
657 F. Supp. 2d 1169 (S.D. Cal. 2009) ...................................... 1, 15, 16

*Moyer v. United States,*
190 F.3d 1314 (Fed. Cir. 1999) ........................................................ 6

*Quileute Indian Tribe v. Babbitt,*
18 F.3d 1456 (9th Cir. 1994) .......................................................... 19

*Renne v. Geary,*
501 U.S. 312 (1991) .................................................................... 6

*Reynolds v. Army & Air Force Exch. Serv.,*
846 F.2d 746 (Fed. Cir. 1988) ......................................................... 6

*Rosales v. United States,*
89 Fed. Cl. 565 (2009) ........................................... 14, 17, 18, 19, 20, 21

*San Carlos Apache Tribe v. United States,*
   639 F.3d 1346 (Fed. Cir. 2011) ........................................................... 9

*Santa Clara Pueblo v. Martinez,*
   436 U.S. 49 (1978) ............................................................................... 20

*Scrase v. United States,*
   118 Fed. Cl. 357 (2014) ................................................................... 6, 7

*Shermoen v. United States,*
   982 F.2d 1312 (9th Cir. 1992) ........................................................... 19

*Steel Co. v. Citizens for Better Env't,*
   523 U.S. 83 (1998) ................................................................................. 6

*Toxgon Corp. v. Bnfl, Inc.,*
   312 F.3d 1379 (Fed. Cir. 2002) ........................................................... 6

*Underwood Livestock, Inc. v. United States,*
   89 Fed. Cl. 287 (2009) ....................................................................... 15

*United States v. Mottaz,*
   476 U.S. 834 (1986) ........................................................................... 16

*Westlands Water Dist. v. United States,*
   109 Fed. Cl. 177 (2013) ....................................................................... 7

**Statutes**

U.S. Const. art. I, § 8, cl. 3 .................................................................. 15

28 U.S.C. § 2501 ..................................................................................... 8

28 U.S.C. § 2409a(a) ............................................................................ 16

Act of Jan. 12, 1891, 26 Stat. 712 ................................................... 2, 16

Pub. L. No. 69-280, 44 Stat. 496 (May 10, 1926) ......................... 4, 5, 10

**Miscellaneous**

*Mesa Grande Band of Mission Indians v. Sacramento Area Dir.,*
   22 IBIA 197 (1992) .............................................................................. 15

# List of Exhibits

| | |
|---|---|
| Exhibit 1 | Executive Order of December 27, 1875 |
| Exhibit 2 | Executive Order of June 19, 1883 |
| Exhibit 3 | Act of January 12, 1891, 26 Stat. 712 |
| Exhibit 4 | Decision of the Assistant Secretary of the Interior in the Matter of Beneficial Ownership Between the Mesa Grande and Santa Ysabel Bands of Mission Indians of Certain Reservation Lands (Mar. 9, 1978) |
| Exhibit 5 | Executive Order of August 27, 1925 |
| Exhibit 6 | Public Law 69-209, 44 Stat. 496 (May 10, 1926) |
| Exhibit 7 | *In the Matter of the Dispute Between the Mesa Grande and Santa Ysabel Bands* (Feb. 6, 1976) |
| Exhibit 8 | Letter from William Gianelli to Chairman Jack Hamilton (Apr. 4, 1978) |
| Exhibit 9 | Excerpts of October 21, 1974, Transcript from *In the Matter of the Dispute Between the Mesa Grande and Santa Ysabel Bands* |
| Exhibit 10 | Letter from Frank L. Haggerty, Jr. to Sacramento Area Office (Mar. 10, 1971) |

## Introduction

This case represents the latest effort by the Mesa Grande Band of Mission Indians to judicially reverse land patent decisions made by the Department of the Interior more than 100 years ago. In 2009, the United States District Court for the Southern District of California dismissed a similarly-themed suit on statute of limitations and sovereign immunity grounds. *See Mesa Grande Band of Mission Indians v. Salazar*, 657 F. Supp. 2d 1169, 1175–78 (S.D. Cal. 2009). The present effort takes a new tact, challenging a related neighboring parcel, the patent for which issued in 1980. But the end result is the same: the Band has brought its suit outside the applicable statutory period and the case should therefore be dismissed.

The limitations period aside, other deficiencies similarly require dismissal. The Mesa Grande Band never held a property interest in the subject land, and issue preclusion prevents it from arguing otherwise. The Band therefore cannot state a claim for which relief can be granted. Further, any judgment in the Band's favor would require a judicial finding that the Band is actually the equitable title holder for land the United States currently holds in trust for another tribe. That other tribe is a necessary and indispensable party that cannot be joined because of sovereign immunity. The case should not proceed in that tribe's absence.

## Factual & Legal Background

The facts here revolve around a land dispute between Plaintiff Mesa Grande Band and the Iipay Nation of Santa Ysabel. Both are federally-recognized Indian Tribes with neighboring reservations northeast of San Diego, California. *See Mesa Grande Band*, 657 F. Supp. 2d at 1171; Indian Entities Recognized & Eligible to

Receive Serv. From the U.S. Bureau of Indian Affairs, 79 Fed. Reg. 4,748, 4,750 (Jan. 29, 2014); Compl. ¶ 3 (ECF No. 1).  The Iipay Nation was formerly known as the Santa Ysabel Band of Diegueño Mission Indians. *See* 79 Fed. Reg. at 4,750.  To avoid confusion, we will refer to the Iipay Nation as "Santa Ysabel."

The dispute's history requires an understanding of the statutory and factual relationship between several parcels of land.  We will refer to the first set of parcels as the "1893 Parcels."  These parcels were the subject of the Mesa Grande Band's prior suit in the Southern District of California.  The remaining parcel we will call the "1926 Parcel," which is the subject of the present suit.

The story of the 1893 Parcels begins in 1875.  That is when President Grant withdrew various federal lands for the "use and occupancy of the Mission Indians of California."  Exec. Order of Dec. 27, 1875, *available in* Kappler, Charles Joseph, *Indian Affairs: Laws & Treaties*, vol. 1, 820–21 (2d ed. 1904) (attached for the Court's convenience as Def.'s Ex. 1); Compl. ¶ 5.  The withdrawal included three tracts of land for the "*Santa Ysabel.*—Including Mesa Grande . . . ." Exec. Order of Dec. 27, 1875.  Eight years later, President Arthur withdrew an additional nearby tract "for the permanent use and occupation of the Mission Indians in the State of California[.]"  *See* Exec. Order of June 19, 1883, *available in Indian Affairs: Laws & Treaties*, vol. 1, at 823 (attached for the Court's convenience as Def.'s Ex. 2).

In 1891, Congress passed "[a]n act for the relief of the Mission Indians in the State of California."  *See* Act of Jan. 12, 1891, 26 Stat. 712, 712–20, 51 Cong. 383 (attached for the Court's convenience as Def.'s Ex. 3).  The 1891 Act created a

Commission—the "Smiley Commission"—to select reservation lands for each Mission Indian band residing in the State. *Id.* § 2. The Act authorized the Secretary of the Interior, upon the Commission's recommendation, to issue land patents for each reservation, with patented land to be held in trust by the United States for the "use and benefit of the band or village to which it is issued[.]" *Id.* § 3.

Acting on a recommendation from the Smiley Commission, the Secretary issued land patents to Santa Ysabel and the Mesa Grande Band in 1893 (hence, "1893 Parcels"). *See* Decision of the Assistant Secretary of the Interior for Indian Affairs in the Matter of Beneficial Ownership Between the Mesa Grande and Santa Ysabel Bands of Mission Indians of Certain Reservation Lands, 2–3 (Mar. 9, 1978) ("Decision of the Assistant Secretary") (attached as Def.'s Ex. 4). Santa Ysabel received trust patents for the three tracts President Grant had withdrawn in 1875. *See* Decision of the Assistant Secretary at 3; Compl. ¶ 8. We shall call these "Santa Ysabel Tracts One, Two, and Three."[1] The Mesa Grande Band received the smaller tract President Arthur had withdrawn in 1883. *See* Decision of the Assistant Secretary at 3; Compl. ¶ 8.

The 1926 Parcel's story takes a different, but related path. The 80-acre parcel was temporarily withdrawn by President Coolidge in 1925 "for the use and benefit of the Indians of the Mesa Grande Indian Reservation[.]" Exec. Order of Aug. 27, 1925, *available in* Kappler, Charles J., *Indian Affairs: Laws & Treaties*, vol. 4, 1016 (1929) (attached for Court's convenience as Def.'s Ex. 5). The temporary

_____

[1] The Complaint simply calls them "Tract 1, Tract 2, and Tract 3." Compl. ¶¶ 5, 8.

3

withdraw did "not affect any existing legal right of any person to any of the land described herein." *Id.* Confusingly, however, "Mesa Grande Indian Reservation" was the local name of Santa Ysabel Tract One, which adjoins the 1926 Parcel. *See* Compl. ¶¶ 15, 16. Thus, the 1926 statute permanently withdrawing the 1926 Parcel stated that the parcel was "withdrawn from settlement, entry, or disposition under the laws of the United States and set apart and reserved for the occupancy and use of the Indians of the Mesa Grande Reservation, *known also as Santa Ysabel Reservation Numbered 1 . . .* to be added to and *become a part of said Indian reservation.*" Pub. L. No. 69-280, 44 Stat. 496 (May 10, 1926) (emphasis added) (attached for the Court's convenience as Def.'s Ex. 6). As the Complaint acknowledges, the statute declared that the 1926 Parcel was to be added to Santa Ysabel Tract One of the 1893 Parcels. Compl. ¶ 19.

"In the late 1960s," the Mesa Grande Band apparently discovered for the first time that it did not hold the beneficial interest in Santa Ysabel Tracts One and Two. *See* Compl. ¶ 24. The Mesa Grande Band asked the Department of the Interior to investigate whether the Secretary had correctly issued those patents, believing that beneficial ownership had been improperly placed with Santa Ysabel. *See* Decision of the Assistant Secretary at 1–3. The Band requested that the patents be cancelled and reissued with the Mesa Grande Band identified as the beneficial interest holder. *Id.* at 3. In 1976, after several years of trial-like proceedings in which the Mesa Grande Band was represented by counsel, an administrative law judge in the Department of the Interior's Office of Hearings and

Appeals issued a recommendation that the Assistant Secretary should deny the request. *See In the Matter of the Dispute Between the Mesa Grande & Santa Ysabel Bands of Mission Indians Concerning the Ownership of Certain Reservation Lands in Ca.* (Feb. 6, 1976) (hereinafter "*In re Mesa Grande*," attached as Def.'s Ex. 7). Dissatisfied, the Mesa Grande Band submitted legal briefs and factual exceptions to the administrative law judge's recommendation, to which Santa Ysabel responded. Decision of the Assistant Secretary at 5. After a review of those materials, the Assistant Secretary ultimately adopted the administrative law judge's recommended decision in March 1978. *See id.* The Department of the Interior provided the Mesa Grande Band with a copy of the Assistant Secretary's final decision. *See* Letter from William Gianelli to Chairman Jack Hamilton (Apr. 4, 1978) (attached as Def.'s Ex. 8)

With the patent issue decided for Santa Ysabel Tract One, Interior turned to the 1926 Parcel, which Congress had directed "to be added to and become a part of" Santa Ysabel Tract One. 44 Stat. at 496 (Def.'s Ex. 6); Compl. ¶¶ 19, 30. Because Santa Ysabel was the beneficial interest holder for Tract One, the Department also named Santa Ysabel as the beneficial interest holder for the 1926 Parcel. *See* Compl. ¶ 30. That was in July 1980. Compl. ¶ 31. Now, thirty-four years later, the Mesa Grande Band argues the Department wrongly identified Santa Ysabel as the beneficial interest holder for the1926 Parcel. *See* Compl. ¶ 1. The Band seeks just compensation under the Fifth Amendment for what it views as a taking of a purported property interest. Compl. ¶¶ 44–48. The Complaint also asserts an

alternative claim for a breach by the Department of purported trust duties owed to the Mesa Grande Band with respect to the 1926 Parcel. Compl. ¶¶ 49–51.

## Standard of Review

Before a court may proceed to the merits of a case it must have jurisdiction over the matter. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89 (1998). Courts are presumed to lack subject matter jurisdiction unless it is affirmatively indicated by the record, and it is the plaintiff's responsibility to allege facts sufficient to establish jurisdiction. *Renne v. Geary*, 501 U.S. 312, 316 (1991); *DaimlerChrysler Corp. v. United States*, 442 F.3d 1313, 1318 (Fed. Cir. 2006). Subject matter jurisdiction is a question of law. *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1381 (Fed. Cir. 2002). Courts may look to evidence outside of the pleadings and inquire into jurisdictional facts. *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947); *Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). If the Court concludes that it lacks subject matter jurisdiction over a claim, Court of Federal Claims Rule ("RCFC") 12(h)(3) requires that the claim be dismissed.

"A claim that survives a jurisdictional challenge remains subject to dismissal under RCFC 12(b)(6) if it does not provide a basis for the court to grant relief." *Scrase v. United States*, 118 Fed. Cl. 357, 361 (2014) (citing *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002)). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The

defenses properly raised under RCFC 12(b)(6) include issue preclusion. *Id.* at 362.

In considering issue preclusion under RCFC 12(b)(6), "[t]he court may properly

considered allegations in the complaint, exhibits attached to the complaint, and

public record materials . . . ." *Copar Pumice Co. v. United States*, 112 Fed. Cl. 515,

527 (2013). Indeed, even outside of an issue preclusion defense, "the court must

consider . . . documents incorporate into the complaint by reference, and matters of

which a court may take judicial notice." *Westlands Water District v. United States*,

109 Fed. Cl. 177, 190 (2013) (citation and internal quotation omitted).

RCFC 12(b)(7) provides the mechanism through which a defendant may move

to dismiss an action for failure to join a necessary party under RCFC 19. *IRIS

Corp. Berhad v. United States*, 82 Fed. Cl. 488, 498 (2008). "In considering a motion

to dismiss under RCFC 12(b)(7), the Court may consider relevant extra-pleading

evidence." *Id.* (citation omitted).

## Argument

This case should be dismissed for three independent reasons. First, the Mesa

Grande Band was on inquiry notice for its claims no later than April 1978 but did

not file this case until 2014, well outside the applicable six-year statute of

limitations. Second, to prove that it had a property interest in the 1926 Parcel, the

Mesa Grande Band would need to demonstrate that it (rather than Santa Ysabel)

should have been the patent recipient for Santa Ysabel Tract One. But that

question has already been decided against the Band, and issue preclusion therefore

prevents the Band from stating a claim for which relief can be granted. Third,

because adjudicating the present claims would require a determination as to the proper beneficial interest holder for Santa Ysabel Tract One, the case directly implicates the interests of the absent Santa Ysabel.  Santa Ysabel, however, cannot be joined because of sovereign immunity, and equity and good conscience counsel against the case proceeding in its absence.

## I.  The Mesa Grande Band's Claims Accrued No Later than April 1978 When the Assistant Secretary Issued His Decision Related to the 1893 Parcels

The Mesa Grande Band's Complaint is time-barred.  "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after the claim first accrues."  28 U.S.C. § 2501.  "A claim first accrues when all the events have occurred that fix the alleged liability of the government and entitle the claimant to institute an action."  *Ingrum v. United States*, 560 F.3d 1311, 1314 (Fed. Cir. 2009).  The limitations period in Section 2501 is jurisdictional and not subject to equitable tolling.  *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133–34 (2008).

The factual basis for the Mesa Grande Band's Complaint is that the trust patent for the 1926 Parcel was not issued in the name of the Band.  The Complaint also makes clear, however, that the Band has not been the beneficial interest holder for the 1926 Parcel since at least 1980, thirty-four years ago.  *See* Compl. ¶ 31. Perhaps recognizing the statute of limitations problem this presents, the Band alleges that it was not aware of the 1980 patent to Santa Ysabel until November 2010.  *Id.* ¶¶ 34–35.  But "a plaintiff does not have to possess actual knowledge of

all the relevant facts in order for a cause of action to accrue." *Fallini v. United States*, 56 F.3d 1378, 1380 (Fed. Cir. 1995). For purposes of the statute of limitations, "[t]he clock starts as soon as the plaintiff is put on notice that inquiry into a possible claim is called for." *L.E. Cooke Corp. v. United States*, 27 Fed. Cl. 753, 754 (1993).[2]

Inquiry notice is evaluated under an objective standard. *Fallini*, 56 F.3d at 1380; *San Carlos Apache Tribe v. United States*, 639 F.3d 1346, 1350 (Fed. Cir. 2011) (applying standard in a breach of trust case).[3] If the underlying facts are available and could have been discovered after an inquiry, "the running of the statute of limitations [will] not be tolled as if [the facts] were 'unknowable.'" *Menominee Tribe v. United States*, 726 F.2d 718, 721 (Fed. Cir. 1984) (citing *Affiliated Ute Citizens v. United States*, 199 Ct. Cl. 1004–05 (1972)). Thus, the Mesa Grande Band's claims can only survive the United States' motion to dismiss if it was "inherently unknowable" that the Band was not the beneficial owner of the 1926 Parcel. *See Coastal Petroleum Corp. v. United States*, 228 Ct. Cl. 864, 867

---

[2] The court in *L.E. Cooke* opined that the statute of limitations was a cause of action requirement rather than a jurisdictional one. This view was later rejected in *John R. Sand & Gravel*, 552 U.S. at 133–34.

[3] The Mesa Grande Band's Complaint does not allege a lack of sophistication on the part of the Tribe or a subjective ignorance of the law. Even it did, however, that subjective ignorance does not bar the accrual of the statute of limitations. *See Catawba Indian Tribe of S. Carolina v. United States*, 982 F.2d 1564, 1572 (Fed. Cir. 1993). "The statute of limitations applies to Indians the same as anyone else." *Ft. Mojave Tribe v. United States*, 210 Ct. Cl. 727, 728 (1976).

(1981) ("[T]he objective criteria of concealment and inherent knowableness of the facts determine the commencement of the statute of limitations.").

The statute of limitations clock for the Mesa Grande Band's Complaint started no later than April 1978. That is when the Assistant Secretary informed the Band that the trust patent for Santa Ysabel Tract One (of the 1893 Parcels) would remain in the name of Santa Ysabel. *See* Def.'s Ex. 8. The Assistant Secretary's letter provided the Band with all the information necessary to bring its present claim or, at minimum, inquire into the status of the 1926 Parcel.

First, the language of the 1926 statute clearly states that beneficial ownership of the 1926 Parcel is directly linked to that of Santa Ysabel Tract One. Congress explicitly directed that the 1926 Parcel "be added to and become a part of" Tract One. 44 Stat. at 496 (Def.'s Ex. 6); Compl. ¶ 19. "[E]veryone is charged with knowledge of the United States Statutes at Large." *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384–85 (1947). Given the 1926 statute's clear language, the Band cannot credibly argue that Interior's conclusion on Santa Ysabel Tract One left it in the dark as to the possibility that the Mesa Grande Band was not the beneficiary of the 1926 Parcel. And the Band was likely on notice even prior to 1978. According to the Complaint, the administrative proceedings resulted from the Band receiving word in "[i]n the late 1960s"—more than forty years ago—that Santa Ysabel Tracts One and Two had not been patented to the Mesa Grande Band. Compl. ¶ 24. Given the language in the 1926 statute, this too would have served to put the Band on notice that the 1926 Parcel may not have been patented in its name.

Second, the 1970s administrative proceedings demonstrate that the Mesa Grande Band was actually aware of the statutory connection between Santa Ysabel Tract One and the 1926 Parcel. In questioning the Bureau of Indian Affairs Realty Officer, the Band's attorney directly stated that the 1926 statute "made the 80 acre tract a legal part of" what we are referring to as Santa Ysabel Tract One. *In the Matter of the Dispute Between the Mesa Grande and Santa Ysabel Bands*, Tr. 10:7–11:22 (Oct. 21, 1974) (attached as Def.'s Ex. 9).

The Band's point at that time appears to have been that the 1926 Parcel was intended for the Mesa Grande Band; thus, given the statutory link in the 1926 statute, Santa Ysabel Tract One must have also been intended for the Mesa Grande Band. *See* Compl. ¶ 25; Letter from Frank L. Haggerty, Jr. to Sacramento Area Office (Mar. 10, 1971) (attached as Def.'s Ex. 10). The administrative law judge did not find that argument compelling, deciding that the Smiley Commission had not erred in concluding that Santa Ysabel Tract One should be patented to Santa Ysabel. *See In re Mesa Grande* at 5, 9–10. With knowledge of that conclusion—and given the statutory link between Santa Ysabel Tract One and the 1926 Parcel—the Mesa Grande Band was put on notice that its assumption about the beneficiary of the 1926 Parcel could also be incorrect. That notice should have led the Band to at least inquire as to the status of the 1926 Parcel and therefore served as the accrual point for the claim the Band now brings. *See Japanese War Notes Claimants Ass'n of Phil., Inc v. United States*, 373 F.2d 356, 359 (Ct. Cl. 1967) ("Once plaintiff is on inquiry that it has a potential claim, the statute can start to run."). Thus, the

period in which the Mesa Grande Band could have brought its present suit ended no later than April 1984—six years after the Band received notice from the Assistant Secretary regarding Santa Ysabel Tract One, but more than thirty years before the Band filed its Complaint. The Complaint is time-barred.

## II. The Mesa Grande Band Has Never Been the Beneficial Interest Holder for the 1926 Parcel and Issue Preclusion Prevents it from Arguing Otherwise

The fact that Santa Ysabel is the beneficial interest holder for Santa Ysabel Tract One also means that the Mesa Grande Band is not, and never has been, the beneficial interest holder for the 1926 Parcel. Thus, the Band cannot state a claim for a Fifth Amendment taking or a breach of fiduciary duty.

The first step in any takings analysis is to determine whether the plaintiff possessed "a valid interest in the property affected by the governmental action, *i.e.*, whether the plaintiff possessed a 'stick in the bundle of property rights.'" *Karuk Tribe of Cal. v. Ammon*, 209 F.3d 1366, 1374 (Fed. Cir. 2000). The Band alleges that "[u]pon enactment of the 1926 Act, property rights in the [1926 Parcel] vested in the Mesa Grande Band." Compl. ¶ 18. The statute and alleged facts do not support that assertion.

The 1926 statute clearly states that the 1926 Parcel was "to be added to and become a part of" Santa Ysabel Tract One. 44 Stat. at 496 (Def.'s Ex. 6). The Mesa Grande Band concedes that interpretation in the Complaint. Compl. ¶ 19. Thus, even assuming that a beneficial interest in the 1926 Parcel vested with the enactment of the statute (rather than with Interior's issuance of the trust patent),

the interest vested in whomever was the beneficial interest holder for Santa Ysabel Tract One.  The Mesa Grande Band concedes that, in 1926, the beneficial interest holder for Tract One was Santa Ysabel.  *See* Compl. ¶ 8 (patent issued in 1893). Indeed, when Interior issued the patent for the 1926 Parcel to Santa Ysabel, the agency acknowledged the statutory link, noting that the land was already held for that Tribe.  *See* Compl. ¶ 32.  Santa Ysabel (not the Mesa Grande Band) held and holds the beneficial interest in the 1926 Parcel. Thus, there was never any Mesa Grande Band property interest for the Department of the Interior to take, and the Band has failed to state a claim for which relief can be granted on its takings claim.

For the same reason, the Band has failed to state a claim for breach of fiduciary duty.  "The federal government . . . incurs specific fiduciary duties toward particular Indian tribes when it manages or operates Indian lands or resources. The elements of this type of common law trust are a trustee (the United States), a beneficiary . . . and a trust corpus (the regulated Indian property, lands or funds)." *Inter Tribal Council of Ariz., Inc. v. Babbitt*, 51 F.3d 199, 203 (9th Cir. 1995) (citing *United States v. Mitchell*, 463 U.S. 206, 225–26 (1983)).  Because the beneficiary of Santa Ysabel Tract One was Santa Ysabel, the beneficiary of the 1926 Parcel is also Santa Ysabel.  Thus, as the Mesa Grande Band never held an interest in the 1926 Parcel, no fiduciary duties to the Band could have arisen.

The only way the Band could overcome the necessary statutory conclusion that Santa Ysabel is the beneficial interest holder of the 1926 Parcel is to argue (yet

again) that Santa Ysabel Tract One should have been patented to the Mesa Grande Band. But the doctrine of issue preclusion bars the argument.

Issue preclusion prohibits parties from burdening the courts and others by relitigating an issue that has already been decided. *See Rosales v. United States*, 89 Fed. Cl. 565, 581 (2009) (quoting *Warthen v. United States*, 157 Ct. Cl. 798, 798 (1962)). The doctrine requires that:

> (1) the issue is identical to the one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) the party against whom [issue preclusion] is invoked had a full and fair opportunity to litigate the issue in the first action.

*Innovad, Inc. v. Mircrosoft Corp.*, 260 F.3d 1326, 1334 (Fed. Cir. 2001) (citation omitted). When those requirements are satisfied, the factual or legal issue in question "'is conclusive in a subsequent action between the parties, whether on the same or a *different claim*.'" *Rosales*, 89 Fed. Cl. at 581 (quoting Restatement (Second) of Judgments § 27 (1982)) (emphasis in original).

The issue preclusion test is easily met here. With respect to the first two prongs, the central issue in the administrative proceedings regarding the 1893 Parcels was whether Santa Ysabel was the intended beneficiary for Santa Ysabel Tract One. The administrative law judge concluded that "the evidence of record is not of sufficient quality to overcome the presumption, as evinced by the patent, that the Santa Ysabel Band is the rightful beneficial owner of the three tracts." *In re Mesa Grande* at 11. With respect to the third prong, the ownership question was not only essential to that ruling, it was the entire basis for the proceeding. The fact

that these findings were made in an administrative, rather than judicial, forum is irrelevant—the Interior Office of Hearings and Appeals was acting in a judicial capacity. *See Underwood Livestock, Inc. v. United States*, 89 Fed. Cl. 287, 299–300 (2009) (citing *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 421 (1966)), *aff'd* 417 Fed. App'x 934 (2011). Finally, the Mesa Grande Band had a "full and fair opportunity" to litigate the issue. The Band was represented by counsel and, after a disfavorable ruling, the administrative law judge and a local agency official even suggested that, if dissatisfied, the Band may want to pursue a district court action. *See In re Mesa Grande* at 12; Def.'s Ex. 8. The Band did not do so until 2008, by which time the statute of limitations had run.[4] *See Mesa Grande Band*, 657 F. Supp. 2d at 1175–78. The Mesa Grande Band cannot base this case on legal arguments it litigated and lost more than thirty years ago.

In any event, this forum is not one in which the Mesa Grande Band can contest the propriety of the 1893 patents or the Department of the Interior's administrative decisions. The Indian Commerce Clause (Const. art. I, § 8, cl. 3), along with the Constitution's structure, gives Congress "plenary power over Indian affairs[.]" *Alaska v. Native Vill. of Venetie Tribal Gov't*, 522 U.S. 520, 531 n.6 (1998). In 1891, Congress directed that the Secretary hold title to Smiley Commission-identified lands in trust for the benefit of Commission-identified tribes.

---

[4] The 2008 district court action came sixteen years after the Mesa Grande Band had belatedly raised an administrative challenge with the Interior Board of Indian Appeals. *See Mesa Grande Band of Mission Indians v. Sacramento Area Dir.*, 22 IBIA 197 (1992) (holding that Band was attempting to reopen a previously decided matter and that the Board did not have jurisdiction to review the 1978 decision).

*See* 26 Stat. at 712–13, §§ 2, 3 (Def.'s Ex. 3). As a result, in 1893, the Secretary issued a trust patent to Santa Ysabel for Santa Ysabel Tract One. The Mesa Grande Band cannot seek review of that administrative decision in this Court. *See Lee v. United States*, 22 Cl. Ct. 457, 463–64 (1991), *aff'd* 954 F.2d 735 (Fed. Cir. 1992). Further, the "exclusive means by which adverse claimants [can] challenge the United States' title to real property" is the Quiet Title Act. *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 (1983). In recognition of the United States' unique relationship with Indian tribes, however—and contemporaneously with the administrative proceedings related to the 1893 Parcels—Congress explicitly preserved the United States' sovereign immunity from suits seeking to quiet title in lands that the United States holds in trust for an Indian tribe. *See* 28 U.S.C. § 2409a(a) ("This section does not apply to . . . Indian lands[.]"); *United States v. Mottaz*, 476 U.S. 834, 842 (1986). Congress intended this Indian lands exception "to allow the United States to carry out its commitments" to the tribal beneficiary for the land in question. *Mesa Grande Band*, 657 F. Supp. 2d at 1175. The Mesa Grande Band cannot use the guise of a takings claim to obtain a judicial pronouncement on ownership of trust lands that Congress has otherwise insulated from judicial reassignment.

The Mesa Grande Band cannot argue that beneficial interest in Santa Ysabel Tract One belongs to anyone other than Santa Ysabel. The Band therefore also cannot argue that beneficial interest in the 1926 Parcel belongs to anyone other

than Santa Ysabel.  As a result, the Band cannot state a claim for which relief can be granted.[5]

## III. Santa Ysabel is a Necessary Party That Cannot Be Joined Because of Sovereign Immunity; In Equity and Good Conscience, the Case Should be Dismissed

The Complaint should also be dismissed pursuant to RCFC Rule 19 because Santa Ysabel is a necessary and indispensable party that cannot be joined.  Rule 19 first requires a court to determine whether an absent party is a "necessary" party requiring joinder.  *Rosales*, 89 Fed. Cl. at 585 (quoting RCFC 19(a)).  If the absent party is "necessary" and joinder is infeasible or impossible, a court must then determine whether that party is "indispensable" to the court's resolution of the claims.  *Id.* at 586.  The action should be dismissed if "in equity and good conscience" the case should not proceed without the absent party.  *Id.* (quoting RCFC 19(b)).

### A. Santa Ysabel is a Necessary Party That Cannot Be Joined Because of Sovereign Immunity

In relevant part, Rule 19(a) states that a person "must be joined as a party if . . . that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest . . . ."  RCFC

---

[5] The doctrine of laches would also bar the Band's efforts to relitigate ownership of Santa Ysabel Tract One. Until the Band filed its 2008 district court claim, the Department of the Interior and Santa Ysabel proceeded for nearly thirty years on the basis of the Assistant Secretary's conclusions and the Mesa Grande Band's decision not to pursue the issue further.  The Band cannot disrupt those settled expectations with arguments it should have further pursued decades ago.

19(a)(1)(B)(i). As set forth above, a ruling favorable to the Mesa Grande Band on the present Complaint necessarily requires a determination that Santa Ysabel Tract One was not properly patented to Santa Ysabel. That places Santa Ysabel's property interest at the center of this case, and Santa Ysabel's ability to protect that interest is impaired if the Tribe is not a party. The fact that the Mesa Grande Band does not explicitly seek to quiet title in the 1926 or 1893 Parcels does not change that conclusion. Rule 19(a) separately addresses questions of relief. *See* RCFC 19(a)(1)(A). Requiring Rule 19(a)(1)(B) to similarly include a remedial tie would make that portion of the Rule superfluous.

In *Rosales*, the Court of Federal Claims addressed the very circumstances presented by the Mesa Grande Band's suit. *Rosales* involved a suit by individual Indians seeking, among other things, compensation for a beneficial interest that the plaintiffs alleged the Department of the Interior to have wrongfully granted to the Jamul Indian Village. *See* 89 Fed. Cl. at 573. Like the Mesa Grande Band's Complaint, *Rosales* alleged a breach of fiduciary duty and a Fifth Amendment taking. *Id.* at 574. Like the Mesa Grande Band's Complaint, *Rosales* originated from the plaintiffs' claim to beneficial ownership in parcels of tribal land. *See id.* at 573. And, like the Mesa Grande Band's Complaint, *Rosales* was filed in the Court of Federal Claims, making money damages (rather than transfer of title) the available remedy.

In *Rosales*, Judge Block concluded that the absent Jamul Indian Village was a necessary party because "[a]djudicating plaintiffs' claims would require

determining the threshold question of plaintiffs' beneficial ownership of [the parcels], and thus necessarily implicates the Village's ownership interest." *Id.* at 585. The same is true here. A ruling in the Mesa Grande Band's favor would undoubtedly be used by Mesa Grande to force the Department of the Interior "to remedy what [the Mesa Grande Band] characterize[s] as interference with [its] ownership rights to [the 1893 Parcels], [and] would necessarily 'impair or impede' [Santa Ysabel's] ownership interest in that land." *Id.* Indeed, it could result in a judicial decision with preclusive effect (between the United States and the Mesa Grande Band) as to ownership of Santa Ysabel Tract One, all without the presence of Santa Ysabel.

The United States is also not able to protect the absent Santa Ysabel's interest. "In disputes involving intertribal conflict, the United States cannot properly represent any of the tribes without compromising its trust obligations owed to all tribes." *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1460 (9th Cir. 1994) (citation omitted); *see Rosales*, 89 Fed. Cl. at 586. "[I]t is unlikely that the government could sufficiently represent the competing interests and divergent concerns of [Mesa Grande and Santa Ysabel], for the government must also act in keeping with its role and obligations as trustee" to both Tribes. *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992).

Santa Ysabel is therefore a necessary party to this suit. But joining Santa Ysabel is not possible. Santa Ysabel is a federally-recognized Indian Tribe. *See* 79 Fed. Reg. at 4,750. Federally-recognized Indian tribes enjoy sovereign immunity

from suit absent a clear consent to suit by the tribe or the United States Congress. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). The Mesa Grande Band has not attempted to join Santa Ysabel or provided any evidence that Santa Ysabel or Congress has waived sovereign immunity.

**B. The Case Should Not Proceed Without Santa Ysabel Because Adjudicating the Merits Would Necessarily Require a Judicial Pronouncement on Equitable Ownership of Santa Ysabel Tract One, for which Santa Ysabel is the Beneficiary**

Given that the necessary Santa Ysabel cannot be joined, this case should be dismissed. This Court considers four factors in determining whether the absence of an unjoinable necessary party requires dismissal in "equity and good conscience." *See* RCFC 19(b). The four factors are: 1) prejudice caused to any party or the absent party; 2) whether relief can be shaped to lessen prejudice; 3) whether an adequate remedy can be awarded without the absent party; and 4) whether there is an alternative forum for the plaintiff's claims. *Id.*; *Rosales*, 89 Fed Cl. at 586. The factors are not rigid, instead serving as guides to the overarching "equity and good conscience" inquiry. *Brown v. United States*, 42 Fed. Cl. 538, 565 (1998) (citation omitted), *aff'd* 195 F.3d 1334 (Fed. Cir. 1999).

Here, equity and good conscience weigh in favor of dismissal. There is no question that judgment rendered in its absence could prejudice Santa Ysabel. As detailed above, any judgment rendered in the Mesa Grande Band's favor would necessarily require a finding that Santa Ysabel is not the beneficial owner of Santa Ysabel Tract One. That prejudice cannot be avoided by shaping relief or other protective provisions in any judgment—no matter the amount of damages that

could be awarded, the inherent legal conclusion regarding Santa Ysabel Tract One would remain. *See Rosales*, 89 Fed. Cl. at 586. Given Santa Ysabel's sovereign immunity, the Mesa Grande Band may very well never have a judicial forum in which it can seek to remedy what it believes to have been an error in equitable title. "But, there are countervailing considerations here. Courts generally afford sovereigns 'heightened protection' if a lawsuit poses 'a potential of injury to the sovereign's interest.'" *Klamath Tribe Claims Comm. v. United States*, 106 Fed. Cl. 87, 94–95 (2012) (citation omitted), *aff'd* 541 Fed. App'x 974 (Fed. Cir. 2013).

> [There is] a "strong policy that has favored dismissal when a court cannot join a tribe because of sovereign immunity." Indeed, "[w]hen . . . a necessary party . . . is immune from suit, there is very little room for balancing of other factors set out in Rule 19(b), because immunity may be viewed as one of those interests compelling by themselves."

*Id.* at 95 (citations omitted). A plaintiff's inability to obtain relief is simply given less weight when compared to "'a public policy that immunizes the absent party from suit.'" *Id.* (citation omitted). Santa Ysabel is a necessary and indispensable party that cannot be joined because of sovereign immunity, and this case must therefore be dismissed.

## Conclusion

The Mesa Grande Band's claims accrued no later than April 1978. The Band, however, did not file suit until 2014, well outside the applicable six-year statute of limitations. The Band has also never held a property interest in the 1926 Parcel and is precluded from arguing otherwise, meaning it cannot state a claim for which

relief can be granted.  Finally, Santa Ysabel is a necessary and indispensable party that cannot be joined.  The Complaint should be dismissed.

January 20, 2015.

JOHN C. CRUDEN
Assistant Attorney General

*Kristofor R. Swanson*
KRISTOFOR R. SWANSON
(Colo. Bar No. 39378)
Trial Attorney
Natural Resources Section
Environment & Natural Resources Div.
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0248
Fax: (202) 305-0506
kristofor.swanson@usdoj.gov

*Attorney of Record for the United States*

Of Counsel:

BETHANY SULLIVAN
Division of Indian Affairs
Office of the Solicitor
U.S. Department of the Interior
333 Bush Street, Suite 775
San Francisco, CA

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2015, I filed the above pleading and its attachments with the Court's CM/ECF system, which will send notice of such filing to all parties.

*s/ Kristofor R. Swanson*
KRISTOFOR R. SWANSON